

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| MAURICE DARNELL GETER,<br>　　　　Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br>　　　　Respondent. | §<br>§<br>§　Criminal Action No. 3:16-00314<br>§　Civil Action No. 3:18-01388-MGL<br>§<br>§<br>§<br>§<br>§ |

**MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT AND DENYING THE AMENDED PETITION**

### I.   INTRODUCTION

Petitioner Maurice Darnell Geter (Geter) brought this amended petition to vacate his sentence (Geter's motion or amended petition) alleging, among other things, ineffective assistance of counsel. The Court has jurisdiction over this case under 28 U.S.C. § 2255.

Pending before the Court are Geter's amended petition and Respondent United States of America's (Respondent or the government) motion for summary judgment. Having carefully considered Geter's amended petition, Respondent's motion, Geter's response, the record, and the applicable law, it is the judgment of the Court Respondent's motion for summary judgment will be granted and the amended petition will be denied.

### II.   FACTUAL AND PROCEDURAL HISTORY

On April 19, 2016, the grand jury indicted Geter on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (Count One); a Hobbs Act robbery,

in violation of 18 U.S.C. § 1951(a) (Count Two), and "knowingly did use and carry a firearm during and in relation to, and did possess a firearm in furtherance of a crime of violence and a drug trafficking crime which are felonies prosecutable in a court of the United States . . ." in violation of 18 U.S.C. § 924(c) (Count Three).  April 19, 2016, Indictment.  On January 31, 2017, Geter, in accordance with a plea agreement, pled guilty to Count 3 of the indictment.  At Geter's plea hearing, the government stated:

> [o]n January 26, 2015, the City of Columbia was using an informant and an undercover police officer to make a purchase of crack cocaine and a gun from Mr. Geter.  The informant was searched and given $200 to purchase the crack cocaine and the undercover police officer was given $200 to purchase a firearm.  The undercover officer was also wearing audio and video surveillance equipment.  The informant called Mr. Geter and they arranged to meet him at the bus transit station.  When the officer and CI arrived, Mr. Geter got into their car and directed them to a house on Edgewood Avenue.  When they arrived at the location, Mr. Geter exited the vehicle to get the gun.  He returned a short time later with the gun that he gives to the undercover police officer.  The undercover officer realizes that the clip is not in the gun. He asked Mr. Geter for the clip who initially refused to provide the clip.  As he said, he was afraid the officer would rob him.  The informant asked for some crack cocaine.  Mr. Geter reaches into his back pocket and pulls out a rock of crack.  The CI asked for more but Geter did not bring it.  The informant and undercover police officer then tell Geter to call them when he gets more crack cocaine.  Mr. Geter gives the officer his money back and asks the officer for the gun back.  Mr. Geter takes the gun and exits the car again and when he returned, he has the clip and gun.  Mr. Geter ejects one of the bullets from the gun and wipes his fingerprints off of it.  The officer tells Mr. Geter that he does not need to do this, that the officer would touch the bullets and put his fingerprints on the bullets.  Mr. Geter gets anxious and yells at the police officer and the informant.  Mr. Geter then racks the gun and points it at the CI and says someone is going to get shot.  Mr. Geter then demands the undercover officer give him the money he was going to buy the gun with, and he also takes the money that the CI was intending to buy crack cocaine with.  Mr. Geter gets out of the car, walks away, leaves with the money and the gun.

Geter's Guilty Plea Tr. pp 62-65.  Geter, upon being questioned by the district court judge, agreed to these facts.  *See id.* at 65.

The Court, on May 25, 2017, sentenced Geter to 262 months as to Count Three, and upon release from imprisonment, a term of supervised release for five years.  Geter failed to file a direct appeal.

Geter, proceeding pro se, subsequently filed a petition for relief under Section 2255.  In this Section 2255 petition, Geter challenged his conviction and sentence based upon the Supreme Court's decision in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018).  The government, in response, contended *Dimaya* inapplicable to Geter's case and moved for summary judgment.  Geter, in reply, argued he pled guilty to the Hobbs Act robbery offense, not to a drug trafficking crime.  Also, in the reply, Geter raised an ineffective assistance of counsel claim.  After the government responded to Geter's reply at the request of the Court, Geter moved for appointment of counsel, which the Court granted.

Geter's appointed counsel filed an amended Section 2255 petition, the government responded and filed a motion for summary judgment, and Geter's counsel replied.  The Court, having been fully briefed on all the relevant issues, is ready to adjudicate Respondent's motion and Geter's amended petition.

**III.   STANDARD OF REVIEW**

A federal prisoner may move to "vacate, set aside or correct" his sentence if it "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized

by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate two elements: 1) "counsel's performance was deficient," and 2) "the deficient performance prejudiced the defense [so as to deprive the defendant of a fair trial]." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The first element analyzes whether trial counsel provided "reasonably effective assistance." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

The second element "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. The defendant raising an ineffective assistance challenge has an affirmative obligation to prove prejudice. *Id.* at 693.

"[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). "In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence," and the second prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 58–59. "In other words, in order to satisfy the prejudice requirement [of the second prong], the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59 (internal quotation omitted).

## IV.     DISCUSSION AND ANALYSIS

Geter raises four arguments in support of his amended petition.

### A.     *Whether Geter's counsel was ineffective for failing to challenge an alleged duplicity in Count Three of the indictment*

Geter avers his trial counsel, Michael Chesser, "was ineffective in failing to challenge the duplicity present in Count [Three] of the indictment." Am. Pet. at 7. Specifically, Geter maintains the language of 18 U.S.C. § 924(c)(1) sets forth four separate offenses by prohibiting four kinds of conduct: "use and carrying of a firearm during and in relation to a drug trafficking offense"; "possession of a firearm in furtherance of a drug trafficking offense"; "use and carrying of a firearm during and in relation to a crime of violence"; "and possession of a firearm in furtherance of a crime of violence." *Id.* at 8. And, according to Geter, if his counsel "had challenged Count 3 as duplicitous, the [g]overnment would have been required to either dismiss the count or cho[o]se which offense contained in Count 3 it intended to pursue." *Id.*

The government, on the other hand, posits "§ 924(c) does not set forth four separate offenses but list[s] the ways in which a defendant could violate the section" and therefore "counsel was not ineffective for not seeking to dismiss this count." Mot. for Summ. J. at 8.

The circuits are spilt on the issue of whether § 924(c) creates one offense or two. Compare *United States v. Combs*, 369 F.3d 925, 933 (6th Cir. 2004) ("[W]e confirm here that 18 U.S.C. § 924(c) criminalizes two separate and distinct offenses."), with *United States v. Arreola*, 467 F.3d 1153, 1158 (9th Cir. 2006) (holding although § 924(c) names two distinct acts, it does not create two separate offenses" and "identifies two ways in which a defendant could violate § 924(c)."); *United States v. Haynes*, 582 F.3d 686, 703 (7th Cir. 2009) ("[O]ur case law suggests that § 924(c) charges one offense that may be committed in more ways than one."), *abrogated on other grounds* by *United States v. Vizcarra*, 668 F.3d 516 (7th Cir 2012).

The Fourth Circuit has yet to address this issue.  Thus, the Court is unable to conclude Geter's counsel's representation, under the first *Strickland* prong, "fell below an objective standard of reasonableness[,]"  *Strickland*, 466 U.S. at 688, inasmuch as the Fourth Circuit, at the time, had failed to address the issue.

Moreover, even if Geter is able to meet the first prong of *Strickland*, the Court is unable to conclude "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . consider[ing] the totality of the evidence before the judge or jury."  *Id.* at 669.  As noted by the government, if Geter "persuaded the [C]ourt that the charge should be dismissed or the [g]overnment must elect which provision to pursue, the [g]overnment would have merely presented a superseding indictment to the next grand jury" breaking down the different ways Geter violated Section 924(c).  Mot. for Summ. J. at 8.  At bottom, under this scenario, "Geter would have once again been faced with the issue of whether to take advantage of a plea bargain offered by the prosecution, or take the higher risk of conviction by a jury."  *Id.* at 9.

Accordingly, the Court concludes Geter fails to meet both prongs of the *Strickland* ineffective assistance of counsel test as to this claim.

### B. *Whether Geter's counsel was ineffective at sentencing in failing to challenge the PSR's finding that he was a career offender*

According to Geter's Presentence Investigation Report (PSR), he was deemed to be a career offender based upon his conviction of possession with intent to distribute crack cocaine near a school under S.C. Code Ann. § 44-53-445(A), PSR ¶ 25, and possession with intent to distribute crack cocaine pursuant to S.C. Code Ann. § 44-53-375(B), PSR ¶ 31.

Geter alleges ineffective assistance of his counsel at sentencing regarding counsel's failure to challenge Geter's designation as a career offender.  In particular, Geter contends "[b]ecause

6

South Carolina's statutory definition encompasses the mere *attempt* to transfer a controlled substance, Geter's prior convictions under S.C. Code § 44-53-375(B) and § 44-53-445(A) are not 'controlled substance offenses,' as the plain language of the Guidelines' definition of 'controlled substance offense' does not include attempt crimes." Am. Pet. at 9.

The government argues Geter's prior state offenses are clearly "controlled substance offenses under U.S.S.G. § 4B1.2 because they are state offenses that are punishable by imprisonment for more than one year that prohibit[] the possession of a controlled substance with the intent to distribute it." Mot. for Summ. J. at 10.

As noted by the government, the Fourth Circuit, in *United States v. Marshall*, 747 Fed. App'x 139 (4th Cir. 2018), recently addressed this factual scenario. In *Marshall*, the criminal defendant challenged the district court's conclusion his four prior South Carolina drug convictions qualified as predicate offenses for purposes of the Armed Career Criminal Act (ACCA) and career offender guideline. *Id.* at 148. As to the state drug convictions, Marshall was convicted, in violation of S.C. Code Ann. § 44-53-445, of three counts of possession with intent to distribute marijuana within the proximity of a school, and one count, in violation of S.C. Code Ann. § 44-53-370, of possession with intent to distribute marijuana. *Id.* at 149. The Fourth Circuit concluded these South Carolina "statutes do not list alternative means of committing a single crime, but instead set forth alternative elements constituting separate crimes." *Id.* at 150. Thus, according to the court in *Marshall*, "the statutes are therefore divisible, and are subject to the modified categorical approach." *Id.*

In arriving at the conclusion the South Carolina state drug statutes are divisible and subject to the modified categorical approach, the Fourth Circuit considered numerous factors: how South Carolina prosecutors charge the offenses, the elements on which South Carolina juries are

instructed, and the manner in which South Carolina courts treat convictions under these statutes. *Id.* At bottom, the *Marshall* court concluded because "the South Carolina offense of possession with intent to distribute . . . matches the definition of a 'controlled substance offense' under the career offender guideline[,]" Marshall's prior drug convictions qualify as predicate offenses. *Id.* at 151. More recently, the Fourth Circuit, in a published opinion, held a defendant's South Carolina conviction for possession with intent to distribute crack cocaine was a controlled substance offense for sentencing purposes. *See United States v. Williams*, 997 F.3d 519 (4th Cir. 2021).

Here, the Court concludes Geter's state convictions of possession with intent to distribute crack cocaine near a school, and possession with intent to distribute crack cocaine, are controlled substance offenses under U.S.S.G. § 4B1.2 for the same reason's articulated by the Fourth Circuit in *Marshall*.

Also, Geter avers "assuming the PSR relied upon state court sentencing sheets as qualifying *Shepard* [*v. United States*, 544 U.S. 13 (2005)] documents, this was error which counsel should have challenged. Am. Pet. at 12. The government, in its motion for summary judgment, again points to the *Marshall* decision that held "[i]n applying the modified categorical approach, we may examine . . . comparable judicial record[s] . . . such as a sentencing sheet from the South Carolina courts[.]" *Marshall*, 747 Fed. App'x at 150. Geter's sentencing sheets state he was convicted of "PWID crack Prox" and "PWID crack 1st" in 2007. *See* Mot. for Summ. J. at 13. These descriptions on the South Carolina sentencing sheets were sufficient to identify the offense of the conviction to determine Geter a career offender. *See generally United States v. Rodriguez-Negrete*, 772 F.3d 221, 227 (5th Cir. 2014) (concluding a South Carolina sentencing sheet that stated a defendant pleaded guilty to "PWID/Dist. Of Cocaine/LSD/other Narcotic drugs in Sch.

8

1(b) and (c)/Sched. II, 1st offense" made clear the defendant "was convicted of a drug trafficking offense.").

Consequently, the Court is unable to conclude "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . consider[ing] the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 669. Accordingly, the Court will grant summary judgment to the government, and deny Geter's amended petition, on this claim.

### C. *Whether Geter's plea was knowing and voluntary*

Geter argues his guilty plea was not knowing and voluntary because he did not know he was pleading to both a crime of violence and a drug trafficking crime. In support of this contention, Geter avers a review of his "guilty plea hearing reveals the [g]overnment's presentation of the facts does not specifically reference *any* underlying crime—drug trafficking crime or crime of violence—that the [g]overnment maintains [he] committed." Am. Pet. at 15.

The government points to Geter's lengthy plea hearing where the Court questioned him, under oath, as to the nature of his plea and his satisfaction with his attorney. *See* Mot. for Summ. J. at 13–14.

"Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). "Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields v. Attorney General*, 956 F.2d 1290, 1299 (4th Cir. 1992). "[A]n appropriately conducted Rule 11 colloquy can only serve meaningfully if the court is entitled to rely on the defendant's statements made under oath to accept a guilty plea." *United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003). "Absent clear and convincing evidence to the contrary, [a defendant] is bound by the

representations he made during the plea colloquy." *Burket v. Angelone*, 208 F.3d 172, 191 (4th Cir. 2000). "For the representations of the defendant, his lawyer, and the prosecutor at [a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge*, 431 U.S. at 73–74.

Here, Geter's buyer's remorse as to his previous admissions his guilty plea was knowing and voluntary is without merit. "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005). Geter has failed to demonstrate extraordinary circumstances to support his claims that directly contradict his sworn statements he made during his plea hearing.

And, as noted by the government, after the Fourth Circuit's opinion in *United States v. Mathis*, 932 F.3d 242, 266 (4th Cir. 2019), both a drug trafficking crime and a Hobbs Act robbery satisfy the requirements under 18 U.S.C. § 924(c). Hence, "by pleading guilty to a Hobbs Act robbery, [Geter] would still be subject to the penalties under § 924(c)." Mot. for Summ. J. at 15 fn 4. Accordingly, the Court concludes Geter's plea was knowing and voluntary.

### D. *Whether a Hobbs Act robbery qualifies as a violent offense under the force clause of 18 U.S.C. § 924(c)*

Geter, in his petition, argued a Hobbs Act robbery fails to qualify as a violent offense under the force clause of 18 U.S.C. § 924(c). But, nine days after Geter filed his amended petition, the Fourth Circuit held, in *Mathis*, 932 F.3d at 266 (footnote omitted), "that Hobbs Act robbery constitutes a crime of violence under the force clause of Section 924(c)." Accordingly, the Court will grant summary judgment to the government, and deny Geter's amended petition, on this claim.

## V.     CONCLUSION

Respondent's motion for summary judgment [110] is **GRANTED**, and the amended petition [108] is **DENIED WITH PREJUDICE**.  All other motions [54, 60, 82, 90, and 91] are **DEEMED AS MOOT**.

To the extent Geter requests a certificate of appealability from this Court, that certificate is **DENIED**.

**IT IS SO ORDERED.**

Signed this 2nd day of September 2021, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE

*****
**NOTICE OF RIGHT TO APPEAL**

The parties are hereby notified of the right to appeal this Order within sixty days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.